IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRI SIMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-584-SLR |
| | ) |
| JOHN E. POTTER, | ) |
| POSTMASTER GENERAL U.S. | ) |
| POSTAL SERVICE, | ) |
| | ) |
| Defendant. | ) |

Terri Simpson, pro se.

Colm F. Connolly, United States Attorney & Seth M. Beausang, Assistant United States Attorney, Wilmington, Delaware.  Attorneys for Defendant.

**MEMORANDUM OPINION**

Dated: December 9, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Pro se plaintiff Terri Simpson ("plaintiff"), filed this action against John E. Potter,

Postmaster General U.S. Postal Service ("defendant"), alleging employment

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq. ("Title VII"), and the Rehabilitation Act, 29 U.S.C. § 791 et seq. On March 5,

2008, defendant filed a motion to dismiss for failure to state a claim, which plaintiff

opposed. (D.I. 11, 15, 16) On June 10, 2008, the court reserved judgment on

defendant's motion and ordered plaintiff to file an amended pleading to correct

identified defects. (D.I. 17, 18) After plaintiff filed an amended complaint on July 7,

2008, defendant renewed his motion to dismiss. (D.I. 19, 20) For the reasons detailed

below, defendant's motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff was originally hired by the United States Postal Service ("USPS") on

September 7, 1997 as a "Part Time Flexible Mail Processer." (D.I. 19 at 1) In 1998,

she completed training for, and was assigned to, the position of "Flat Sorter Mail Clerk."

(*Id.*) In 2002, plaintiff was employed in a "light duty" capacity.[1] (D.I. 2 at 4) On June 26

of that year, plaintiff was called into the office of her supervisor, John Williams, to

discuss the status of her employment at USPS. (*Id.*) Williams asked plaintiff how long

she had been working on light duty, for what position was she hired, and for how long

---

[1]Upon reading the amended complaint, the court notes that plaintiff does not
admit that her light duty assignment was temporary. She produces a number of
documents regarding her transfer from mail processor to flat sorter clerk and there is no
indication that this reassignment was temporary. In this regard, therefore, the court's
June 10, 2008 memorandum opinion (D.I. 17 at 1) was inaccurate.

had she not been able to perform that position. (*Id.*) Plaintiff answered all of Williams'
questions.[2] (*Id.*) Williams then informed plaintiff that, because her condition was
permanent, USPS could no longer accommodate her as a light duty employee and that
she was being terminated. (*Id.*) He requested that she return her badge and
identification card and clean out her locker. (*Id.*) He then suggested that she file for
retirement disability and wished her luck in the future. (*Id.*)

The following day, a union trustee informed plaintiff that she was actually on
administrative leave with pay. (*Id.*) After thirty days, this status changed to
administrative leave without pay. (*Id.*) On May 16, 2003, plaintiff was informed that her
position at USPS was terminated and that she could file for retirement disability. (*Id.*)

Plaintiff, with the assistance of counsel, filed a complaint with the Equal
Employment Opportunity Commission ("EEOC"). Following an investigation of the
complaint, she requested a hearing. (D.I. 12 at A1) The EEOC appointed an
Administrative Judge ("AJ") to conduct the hearing, which was scheduled for October 5,
2005 at 12:00 P.M. (*Id.*) At the appointed time of the hearing, the AJ telephoned
plaintiff's counsel and left a voice mail to inform him that the hearing would be delayed
one hour to 1:00 P.M. (*Id.*) When the USPS representative attempted to initiate the
prehearing teleconference with plaintiff's counsel at 1:00 P.M., the call again went
directly to voice mail. (*Id.* at A3) Consequently, the AJ found that plaintiff failed to
appear and issued an order to show cause within 10 days. (*Id.*) Plaintiff's counsel sent
a letter to the AJ dated October 12, explaining that family problems caused him to "not

[2]The court notes that plaintiff did not recite the answers she gave to Williams but
only states that she answered them. (*See* D.I. 2 at 4; D.I. 19 at 1-2)

2

be as attentive as [he] should be to [his] schedule," but did not provide any additional evidence. (*Id.* at A4)

On October 25, 2005, the AJ issued an order dismissing the case for failure to appear for the prehearing conference on October 5, explaining that plaintiff's response to the order to show cause provided insufficient evidence to show that "uncontrollable circumstances precluded [her] appearance[]." (*Id.* at A5-A6) As a sanction, the AJ dismissed plaintiff's pending request for a hearing, cancelled a hearing scheduled for October 28, 2005, and remanded the case to USPS for a decision. (*Id.* at A7) Plaintiff filed a request for reconsideration with the AJ, which was denied in an order dated November 1, 2005. (*Id.* at A9) USPS issued its decision on December 6, 2005, finding that it did not discriminate against plaintiff. (*Id.* at A11) Plaintiff appealed that determination to the EEOC, which issued its decision on July 5, 2007, affirming the rulings of the AJ and USPS' decision on the merits. (*Id.* at A11-A13) Plaintiff filed a request for reconsideration of the EEOC's ruling that was denied in a final decision dated September 7, 2007; this decision also informed plaintiff of her right to sue in district court. (D.I. 2 at 5-6) On September 24, 2007, plaintiff timely filed this action against defendant by way of a form Title VII complaint alleging that her termination was motivated by discrimination on the basis of her race and disability. (*Id.* at 3)

Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 5, 2008. (D.I. 11) This court issued an order on June 10, 2008, withholding judgment on defendant's motion pending submission of an amended complaint by plaintiff within thirty days. (D.I. 18) Plaintiff timely filed a letter reply on July 7, 2008.

3

(D.I. 19) Defendant filed a response to plaintiff's amended complaint reasserting his contentions that plaintiff has failed to state a claim upon which relief could be granted and that she failed to exhaust her administrative remedies. (D.I. 20) Plaintiff filed a further response on August 18, 2008. (D.I. 21) The court will construe plaintiff's submissions, coupled with her original complaint (D.I. 2), as an amended complaint for purposes of deciding defendant's motion.

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, --- U.S. ----, 127 S. Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

## IV. DISCUSSION

4

Since plaintiff proceeds pro se, her pleadings are liberally construed and her complaint, "however inartfully pleaded, must be *held* to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, --- U.S. at ----, 127 S. Ct. at 2200 (citations omitted). Under this pleading standard, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element" of a claim. *Phillips v. County of Allegheny*, 515 F.3d 224, 233-34 (3d Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.*

Plaintiff alleges discrimination on the part of defendant under Title VII, 42 U.S.C. § 2000e et seq., and under the Rehabilitation Act, 29 U.S.C. § 791 et seq. By the court's June 10, 2008 order, plaintiff was required to assert any additional allegations that could support her claim of racial discrimination in her amended complaint. (D.I. 18) Plaintiff, however, has failed to allege any additional facts to support the discriminatory animus requirement. Plaintiff's only statement in this regard is that "information concerning racial discrimination cannot be located," which is not sufficient to sustain her burden. (D.I.19 at 2) Therefore, for the reasons stated in the memorandum opinion issued on that date (D.I. 17), plaintiff has failed to state a claim for relief under Title VII. Accordingly, the court grants defendant's motion to dismiss plaintiff's Title VII claim.

For plaintiff's claim under the Rehabilitation Act, defendant puts forth two arguments in favor of his motion to dismiss. (D.I. 12) First, defendant contends that plaintiff failed to exhaust administrative remedies by not making a good faith effort to

5

cooperate with the EEOC's investigation of her claim. Second, defendant asserts that plaintiff's complaint does not establish a claim upon which relief can be granted. Each defense will be examined in turn below.

## A. Failure to Exhaust Administrative Remedies

It is a statutory requirement of the Rehabilitation Act that plaintiff exhaust her administrative remedies with the EEOC prior to filing a lawsuit. 29 U.S.C. § 794a(a)(1); 29 C.F.R. § 1614.105. The purposes of this requirement are "to promote administrative efficiency, respect executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (internal quotation and alteration deleted). "Failure to exhaust administrative remedies is an affirmative defense in the nature of [a] statute of limitation." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). The United States Court of Appeals for the Third Circuit has described this defense as one "best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim." *Robinson*, 107 F.3d at 1022. This allows the court to "satisf[y] itself that the claim is properly before it." *Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007). The relevant federal regulation that defines when plaintiff may file a civil action in district court, 29 C.F.R. § 1614.407, states that "[a] claimant who has filed an individual complaint . . . is authorized under . . . the Rehabilitation Act to file a civil court action in the appropriate United States District Court . . . within 90 days of receipt of the EEOC's final decision on an appeal . . . ." *See also Patnaude v.*

6

*Gonzales*, 478 F. Supp. 2d 643, 648 n.9 (D. Del. 2007) ("The employee may then file a civil action after receiving a final decision or after a complaint has been pending before the EEOC for at least 180 days.").

Defendant argues that, for the court to entertain her suit, plaintiff must have exercised a "good faith effort to cooperate with the EEOC." (D.I. 12 at 9) Defendant relies on a number of reported and unreported district court opinions as well as those of other Courts of Appeals. The court sees no need to distinguish each case; it is sufficient to note that most of the cases to which defendant cites consider "failure to cooperate" to be analogous to abandonment of the claim.[3] *See, e.g., Patnaude*, 478 F. Supp. 2d at 649 (holding plaintiff failed to cooperate when he "stopped participating in the administrative process"); *Brown v. Tomlinson*, 383 F. Supp. 2d 26, 30 (D.D.C. 2005) (finding plaintiff failed to cooperate when he withdrew his complaint to file suit after his "half-hearted efforts" at discovery); *Tanious v. I.R.S.*, 915 F.2d 410, 411 (9th Cir. 1990) (per curiam) (analogizing failure to cooperate as abandonment).

Defendant relies principally on *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005), for his position that failure to cooperate in any way equals failure to exhaust administrative remedies. In *Shikles*, the United States Court of Appeals for the Tenth Circuit held that the cooperation requirement was implicit in the statute, in that case the Age Discrimination in Employment Act, and was not an additional requirement, thus complying with "the Supreme Court's admonition that no

---

[3]The court assumes, without deciding, that this is the proper standard to determine whether a plaintiff has exhausted her administrative remedies under federal anti-discrimination statutes.

7

requirements beyond those in the statute should be imposed." *Id.* at 1315. This

interpretation, however, is not shared by all Courts of Appeals.[4] *See Doe v. Oberweis*

*Dairy,* 456 F.3d 704, 710 (7th Cir. 2006) ("The Tenth Circuit acknowledged the

Supreme Court's admonition that no requirements beyond those in the statute should

be imposed . . . but it imposed them anyway.") (internal quotation and citation omitted).

It is sufficient to note that, *like* the cases above and for the same reasons, *Shikles,* is

distinguishable from the present case. The Tenth Circuit found that

> Shikles failed to cooperate with the EEOC at all. Shikles failed to make himself
> available for a telephone interview. He failed to provide the EEOC with the
> documents that it requested, or to explain why he could not provide such
> documents. His attorney did not respond at all to several of the EEOC's
> attempts to contact him. While we do not hold that any of these facts, on its
> own, conclusively determines that Shikles failed to cooperate with the EEOC, the
> combination indicates the total lack of a good faith effort at cooperation.

426 F.3d at 1317. As discussed below, none of these circumstances is present in the

case at bar.

The final argument defendant makes concerning failure to exhaust involves an

unreported case from the Eastern District of Louisiana. *Dogans v. Martinez,* No. Civ. A.

03-2851, 2004 WL 241703 (E.D. La. Feb. 10, 2004). *Dogans* featured a plaintiff who

had filed 55 separate claims with the EEOC. *Id.* at *1. The administrative judge set a

hearing at which both plaintiff and her counsel failed to appear. *Id.* Plaintiff's counsel

took full responsibility, blaming the default on an error in noting the date in his calendar.

*Id.* The *Dogans* court dismissed plaintiff's lawsuit, citing the default at the hearing as a

failure to exhaust administrative remedies. *Id.* at *3. Defendant explicitly requests that

___

[4]Defendant did not provide, nor was the court able to find, any Third Circuit
precedent addressing this specific issue.

the court adopt the holding in *Dogans* concerning plaintiff's efforts to exhaust her administrative remedies. While the court does not express an opinion on the holding, *Dogans* is of limited applicability to the present case. Magistrate Judge Shushan not only made a determination based on a motion to dismiss but simultaneously decided the case in the alternative on the merits in a summary judgment motion. *Id.* at *1. Second, and perhaps more importantly, the motion to dismiss was one submitted under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction). *Id.* Fifth Circuit precedent treats failure to exhaust administrative remedies as depriving the district court of subject matter jurisdiction, an interpretation that the Third Circuit has explicitly rejected. *Id.* at *2; *compare Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990) ("Failure to comply with either of these requirements wholly deprives the district court of jurisdiction over the case; it is the well-settled law of this circuit that each requirement is a prerequisite to federal subject matter jurisdiction.") *with Williams*, 475 F.3d at 174 ("[T]his court has previously determined that questions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction.").

In the present case, there is no indication that plaintiff either failed to cooperate or that she abandoned her claim before the EEOC. Plaintiff does not dispute that she, through counsel, failed to appear at the prehearing teleconference on October 5, 2005. (*See* D.I. 15) Plaintiff's efforts to subsequently cooperate with the EEOC and pursue her claim are demonstrated through her: (a) counsel's reply to the AJ's order to show cause; (b) request to reconsider; (c) appeal of USPS's final decision; and, in particular

9

(d) filing of this suit only after receiving the right-to-sue letter from the EEOC. (D.I. 2 at 5-6).[5] The record fully indicates that, while plaintiff made one mistake which appears to have been fatal to her EEOC complaint, she complied with every procedure subsequent to the dismissal to ensure that all remedies open to her were exhausted. This determination is within the court's discretion since, as noted earlier, the fundamental question to be answered is whether the suit is properly before the court in the first place. See Wade v. Sec'y of Army, 796 F.2d 1369, 1378-79 (11th Cir. 1986) (reversing and remanding a dismissal for failure to exhaust for a de novo district court determination on whether plaintiff, in fact, failed to comply in good faith with regulatory requirements). The court finds that plaintiff has exhausted her administrative remedies and her claim is properly before the court.

## B. Failure to State a Claim

To establish a prima facie case under the Rehabilitation Act, plaintiff must allege that she: (1) has a disability; (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) was nonetheless terminated or otherwise prevented from performing the job. Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007). Disability is defined as a mental or physical impairment that substantially limits a major life activity. Id. at 185.

Plaintiff, in her amended pleadings, contends she has a physical impairment of "venous insufficiency" and that the permanent nature of this impairment led to her termination, thus meeting the third element of a prima facie case under the

---

[5]The court notes that this EEOC decision was not reproduced in defendant's appendix but was attached to plaintiff's complaint.

10

Rehabilitation Act. (D.I. 19 at 13)  The first element is that plaintiff has a disability.

Plaintiff indicates that her impairment, venous insufficiency, affects her ability to stand

for longer than fifteen minutes without rest.  (D.I. 12 at A11)  Standing is identified as a

major life activity in the EEOC's Interpretive Guidance on Title I of the Americans with

Disabilities Act ("ADA"), 29 C.F.R. § 1630.2(i) App.  Congress explicitly amended the

Rehabilitation Act to incorporate the standards of Title I of the ADA in determining a

violation. *See* 29 U.S.C. § 791(g).  Plaintiff also alleges that this impairment was

permanent and substantial enough in its effects on her activities to lead to her

termination.  (D.I. 2 at 4)  Taking these facts to be true, as the court must in a motion to

dismiss, plaintiff has sufficiently alleged she has a disability.

For the second prima facie element of a claim of disability discrimination, plaintiff

must allege facts sufficient to indicate she was "otherwise qualified" for the position she

had or for some other position at USPS. *Wishkin*, 476 F.3d at 185.  In her latest

submission, plaintiff alleges that her position as a "Flat Sorter Mail Clerk" "had many

functions" that she was "qualified" to perform; however, she implies that she could

actually perform only the "sedentary part of the job which was the 3/10 scheme and

keying the mail that was loaded on the conveyor belt by zip codes."  (D.I. 21)[6]  The

[6]The standard USPS job description for Flat Sorter Mail Clerk lists five duties and
responsibilities:  (1) reading and keying ZIP codes on each piece of mail to ensure
proper sorting which "[a]pplies a high degree of manual and visual coordination and
close visual at[t]ention for sustained periods;" (2) "[m]ay serve for a portion of the time,
on a rotation basis, as loader and/or sweeper/t[i]er," which involves "cull[ing] mail to
remove nonmachinable pieces and load[ing] mail onto ledges for processing" (loader),
and "remov[ing] mail from . . . the machine, . . . verif[ying] sorted mail for accuracy,
t[ying] mail into bundles or dispatch[ing] direct[ly] to sacks, pouches or other containers"
(sweeper/t[i]er); (3) performing manual distribution, as required; (4) operation of other
sorter machines after completion of appropriate training; (5) performing "other job-

11

record indicates, therefore, that plaintiff was not qualified for the position she had, that of "Flat Sorter Mail Clerk."

The question remains whether plaintiff has sufficiently alleged that she was qualified for some other position at USPS. In her latest submission, plaintiff asserts that she was "qualified for the vacant position of Mark up Clerk," as well as for the "available" positions of "Nixie Table" and "the Security Gate Monitor." (D.I. 21) Whether in fact plaintiff was qualified and able to perform the duties and responsibilities of the above positions, and whether said positions were "vacant, funded position[s]" at the USPS are not apparent at this stage of the proceedings. Nevertheless, the court finds that plaintiff's allegations in this regard are sufficient to withstand defendant's motion to dismiss.

Given the fact that plaintiff is proceeding *pro se*, it is important at this juncture to delimit plaintiff's claim based on the multiple papers she has submitted in connection with the motion to dismiss, for purposes of discovery and summary judgment. In the first instance, it is the court's understanding that plaintiff is not seeking to transform a temporary position into a permanent one;[7] rather, the reasonable accommodation plaintiff sought was that she not be required to stand for longer than fifteen minutes without rest, apparently referred to as "light duty." (D.I. 19 at 15) Second, plaintiff's claim is limited to her proving that she was qualified and otherwise able to perform the

related tasks in support of primary duties." (D.I. 19 at 11)

[7]And, indeed, in this regard the court agrees with defendant that USPS is not required to transform a temporary position into a permanent one to reasonably accommodate plaintiff. (D.I. 12 at 11) *See Mengine v. Runyon*, 114 F.3d 415, 418 (3d Cir. 1997).

three positions identified in her amended pleadings, that is, "Mark up Clerk," "Nixie Table" and "Security Gate Monitor."[8]

## V. CONCLUSION

For the aforementioned reasons, defendant's motion to dismiss is granted in part and denied in part.

---

[8]In her latest submission, plaintiff notes the "need for scheme clerks" but does not specifically allege that she was qualified or otherwise able to perform the duties and responsibilities of that position.  (D.I. 21)  Therefore, the court declines to allow plaintiff to pursue a recovery based on such.

13