IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRI SIMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 07-584-SLR |
| | ) |
| JOHN E. POTTER, | ) |
| POSTMASTER GENERAL, UNITED | ) |
| STATES POSTAL SERVICE, | ) |
| | ) |
| Defendant. | ) |

Terri Simpson. Pro se Plaintiff.

David C. Weiss, United States Attorney & Seth M. Beausang, Assistant United States Attorney, Wilmington, Delaware. Attorneys for Defendant.

**MEMORANDUM OPINION**

Dated: February 25, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Pro se plaintiff Terri Simpson ("plaintiff") filed this action against John E. Potter ("defendant"), Postmaster General of the United States Postal Service ("USPS"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Rehabilitation Act, 29 U.S.C. § 791 et seq. On March 5, 2008, defendant filed a motion to dismiss (D.I. 11), which the court granted in part as to plaintiff's Title VII claim, and denied in part as to plaintiff's claims under the Rehabilitation Act. (D.I. 22, 23) More specifically, for the purposes of discovery and summary judgment, the court limited plaintiff's Rehabilitation Act claims to the following two issues: (1) a claim that plaintiff was entitled to a reasonable accommodation, in which plaintiff would not be required to stand for longer than fifteen minutes without rest; and (2) a claim that plaintiff was qualified and otherwise able to perform one of the three positions identified in her amended pleadings, that is, Mark-Up Clerk, Nixie Table, or Security Gate Monitor. (D.I. 22 at 12-13) Now before the court is defendant's motion for summary judgment. (D.I. 34) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the court grants defendant's motion.

## II. BACKGROUND

Plaintiff was originally hired by the USPS on September 7, 1997 as a Part Time Flexible ("PTF") Mail Processer, which requires a person to stand during the entire shift. (D.I. 19 at 1; D.I. 35, ex. A at 25) In 1998, plaintiff completed training for, and was assigned to, the position of Flat Sorter Mail Clerk, which requires a person to stand for

approximately half of the shift. (D.I. 19 at 1; D.I. 35, ex. A at 30) Because of venous insufficiency, a physical impairment that affects a person's ability to stand, plaintiff requested light duty.[1] (D.I. 19 at 11, 13) Light duty is defined under the USPS Collective Bargaining Agreement (the "CBA") as a temporary position given to an employee who cannot perform his/her regular job because of a non-work related injury. (D.I. 35, ex. B at ¶ 6) At some point in 1998 or 1999, defendant granted plaintiff's request to work on light duty, which allowed plaintiff to perform only the sitting portion of her Flat Sorter Mail Clerk position. (D.I. 35, ex. A at 30, 41-42)

On June 26, 2002, plaintiff was called into the office of her supervisor, John Williams ("Williams"), to discuss the status of her employment at the USPS. (D.I. 2 at 4) Williams asked plaintiff how long she had been working on light duty, for what position was she hired, and for how long had she not been able to perform that position. (*Id.*) Plaintiff answered all of Williams' questions.[2] (*Id.*) Williams then informed plaintiff that, because her impairment was permanent, the USPS could no longer accommodate her as a light duty employee and she was being terminated. (*Id.*) He requested that she return her badge and identification card and clean out her locker. (*Id.*) He then suggested that she file for retirement disability and wished her luck in the future. (*Id.*)

The following day, a union trustee informed plaintiff that she was actually on administrative leave with pay. (*Id.*) After thirty days, this status changed to

---

[1]Through the submission of a doctor's note, plaintiff alleges that, as of 2002, she was unable to stand for longer than fifteen minutes without rest. (D.I. 19 at 11-12)

[2]Plaintiff did not recite the answers she gave to Williams, but only states that she answered them. (*See* D.I. 2 at 4; D.I. 19 at 1-2)

administrative leave without pay. (*Id.*) Subsequent to speaking with the union trustee, plaintiff met twice with the reasonable accommodation committee in an attempt to be transferred to another position. (D.I. 35, ex. A at 65-66) After the second meeting with said committee, plaintiff was sent a letter stating that she could not be accommodated. (*Id.* at 81)

On May 16, 2003, plaintiff was informed that her position at the USPS was terminated and that she could file for retirement disability. (D.I. 2 at 4) Thereafter, plaintiff, with the assistance of counsel, filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (D.I. 12 at A1) Following an investigation of the complaint, she requested a hearing. (*Id.*) The EEOC appointed an Administrative Judge ("AJ") to conduct the hearing, which was scheduled for October 5, 2005 at 12:00 p.m. (*Id.*) At the appointed time of the hearing, the AJ telephoned plaintiff's counsel and left a voice mail to inform him that the hearing would be delayed one hour to 1:00 p.m. (*Id.*) When the USPS representative attempted to initiate the prehearing teleconference with plaintiff's counsel at 1:00 p.m., the call again went directly to voice mail. (*Id.* at A3) Consequently, the AJ found that plaintiff failed to appear and issued an order to show cause. (*Id.*) Although plaintiff's counsel timely sent a letter to the AJ explaining that family problems caused him to "not be as attentive as [he] should be to [his] schedule," he did not provide any additional evidence. (*Id.* at A4)

On October 25, 2005, the AJ issued an order dismissing the case for failure to appear for the prehearing conference on October 5, explaining that plaintiff's response to the order to show cause provided insufficient evidence to show that "uncontrollable

circumstances precluded [her] appearance[]." (*Id.* at A5-A6) As a sanction, the AJ dismissed plaintiff's pending request for a hearing, cancelled a hearing scheduled for October 28, 2005, and remanded the case to the USPS for a decision. (*Id.* at A7) Plaintiff filed a request for reconsideration with the AJ, which was denied in an order dated November 1, 2005. (*Id.* at A9) The USPS issued its decision on December 6, 2005, finding that it did not discriminate against plaintiff. (*Id.* at A11) Plaintiff appealed that determination to the EEOC, which issued its decision on July 5, 2007, affirming the rulings of the AJ and the USPS decision on the merits. (*Id.* at A11-A13) Plaintiff filed a request for reconsideration of the EEOC's ruling that was denied in a final decision dated September 7, 2007; this decision also informed plaintiff of her right to sue in district court. (D.I. 2 at 5-6) On September 24, 2007, plaintiff timely filed this action against defendant by way of a form Title VII complaint alleging that her termination was motivated by discrimination on the basis of her race and disability. (*Id.* at 3)

Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on March 5, 2008. (D.I. 11) The court issued an order granting in part defendant's motion with respect to plaintiff's Title VII claim, and denying in part defendant's motion with respect to plaintiff's Rehabilitation Act claims. (D.I. 22, 23) Defendant brings the present motion for summary judgment after the completion of discovery, arguing that, even with a reasonable accommodation, plaintiff was neither qualified nor able to perform the essential functions of either her Flat Sorter Mail Clerk job, or the jobs of Mark-Up Clerk, Nixie Table, or Security Gate Monitor.[3]

---

[3]Although the court limited plaintiff's Rehabilitation Act claims for summary judgment purposes to whether defendant should have transferred plaintiff to a Mark-Up

4

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences from the evidence must be drawn in that party's favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U. S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting

---

Clerk, Nixie Table, or Security Gate Monitor position, defendant also argues in his opening brief that plaintiff does not have a Rehabilitation Act claim concerning her position as a Flat Sorter Mail Clerk. (D.I. 22 at 12-13; D.I. 35 at 11) As discussed below, the court acknowledges that plaintiff cannot bring a Rehabilitation Act claim involving her Flat Sorter Mail Clerk job.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). To survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Blozis v. Mellon Trust of Delaware Nat'l Ass'n*, 494 F. Supp. 2d 258, 267 (D. Del. 2007) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

To establish a prima facie case under the Rehabilitation Act, the plaintiff bears the burden of proving: "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996). For the purposes of this summary judgment motion, defendant concedes that plaintiff has a disability within the meaning of the Rehabilitation Act and was terminated from her job, thus meeting the first and third elements of plaintiff's

Rehabilitation Act claim.[4] (D.I. 35 at 11) However, defendant argues that he is entitled to summary judgment because plaintiff cannot establish the second element of her Rehabilitation Act claim, i.e., that plaintiff was qualified to perform the essential functions of an available job at the USPS, even with a reasonable accommodation. (D.I. 35 at 2) Each position for which plaintiff claims she was qualified or able to perform is discussed below.

### A. Flat Sorter Mail Clerk

Defendant argues that allowing plaintiff to continue working her temporary light duty Flat Sorter Mail Clerk job is not a reasonable accommodation under the Rehabilitation Act. (D.I. 35 at 11) In *Shiring*, the Third Circuit held that, even though the USPS temporarily accommodated a letter carrier's ("Shiring's") foot disability by putting him on light duty, the USPS was not required to maintain such a position as a reasonable accommodation under the Rehabilitation Act. 90 F.3d at 831. The Third Circuit dismissed Shiring's Rehabilitation Act claim because Shiring was not able to perform the duties of his letter carrier position, and the light duty position "was not an official position, but had been created by the Postal Service to give Shiring something to

---

[4]Plaintiff contends that the permanent nature of her impairment, venous insufficiency, led to her termination, thus meeting the third element of a prima facie case under the Rehabilitation Act. (D.I. 19 at 11, 13) Plaintiff also contends that she meets the first element of her Rehabilitation Act claim, that she has a disability, because venous insufficiency affects her ability to stand for longer than fifteen minutes without rest. (*Id.* at 11-12) Taking these facts to be true, plaintiff would have a disability within the meaning of the Rehabilitation Act. *See* 29 U.S.C. § 705(20)(B) (defining "individual with a disability" as "any person who has a disability as defined in section 12102 of Title 42"); Americans with Disabilities Act, 42 U.S.C. § 12102(1)(A) (describing disability as "a physical or mental impairment that substantially limits one or more major life activities . . ."); 42 U.S.C. § 12102(2)(A) (defining standing as a major life activity).

7

do on a temporary basis." *Id.*

The Third Circuit once again examined the Rehabilitation Act in *Mengine v. Runyon*, 114 F.3d 415, 418-19 (3d Cir. 1997). The Court explained that in most situations, requiring an employer to transform a temporary job into a permanent one would be unreasonable. *Mengine*, 114 F.3d at 418. However, the Court noted that this rule was subject to a limited exception where an employer might be required to transform a temporary job into a permanent position because the cost to the employer is slight and the benefits to the employee are considerable. *Id.* at 419.

Like the plaintiff in *Shiring*, defendant argues that plaintiff at bar cannot perform the essential functions of her Flat Sorter Mail Clerk job and is not entitled to be permanently assigned to light duty. (D.I. 35 at 12) The court agrees. Plaintiff admitted at her deposition that she could not perform the standing portion of her Flat Sorter Mail Clerk job, which required plaintiff to stand for half of the shift. (D.I. 35, ex. A at 29-30, 67-70) Instead, plaintiff argues that defendant should have allowed her to remain at her light duty position. (*Id.*) Pursuant to *Shiring*, defendant is not required under the Rehabilitation Act to transform plaintiff's temporary light duty position into a permanent one. See *Shiring*, 90 F.3d at 831.

The court also agrees with defendant that the case at bar is not that rare case in which an employer should be required to transform a temporary job into a permanent position. Even though plaintiff could not perform the essential functions of her Flat Sorter Mail Clerk job since at some point in either 1998 or 1999, defendant accommodated her in a light duty position until 2002. (D.I. 35, ex. A at 30, 41-42)

8

Defendant claims that plaintiff was asked to return to her regular job or apply for disability retirement only after "the Postal Service's increased use of automation made [plaintiff's] light duty manual distribution job unnecessary." (D.I. 35 at 13, n. 7) Plaintiff admitted at her deposition that, at the time surrounding her termination, the USPS was laying off light duty employees because the USPS was moving towards automation. (D.I. 35, ex. A at 54) The court finds that requiring defendant to transform plaintiff's temporary light duty position into a permanent one is not required by the Rehabilitation Act, since the cost to defendant of retaining a light duty position that was made unnecessary due to automation is not slight compared to the benefits that plaintiff would derive from remaining on light duty. See Mengine, 114 F.3d at 419.

In her answering brief, plaintiff failed to address the issue of whether she has a Rehabilitation Act claim concerning either her Flat Sorter Mail Clerk job or her temporary light duty assignment for said position. (See D.I. 36) As the court has previously noted, "plaintiff was not qualified for the position she had, that of 'Flat Sorter Mail Clerk.'" Simpson v. Potter, 589 F. Supp. 2d 424, 432 (D. Del. 2008). Nothing in the record or briefs convinces the court to change its position and it, therefore, concludes that plaintiff does not have a Rehabilitation Act claim concerning her position as a Flat Sorter Mail Clerk.

### B. Failure-To-Transfer Claims

In order to have a failure-to-transfer claim under the Rehabilitation Act, plaintiff has the burden "to make at least a facial showing that such accommodation is possible . . . [by] demonstrat[ing] that there were vacant, funded positions whose essential duties

[plaintiff] was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [plaintiff's former position]." *Shiring*, 90 F.3d at 832 (internal citation omitted). Moreover, "[a]n employer is not required to create a job for a disabled employee." *Mengine*, 114 F.3d at 418. Each of plaintiff's failure-to-transfer claims is discussed in turn.

### 1. Mark-Up Clerk

Defendant argues that plaintiff was not entitled to be transferred to a Mark-Up Clerk position, because there were no vacant, funded positions; i.e., there were no positions to which plaintiff could have been transferred without violating another employee's rights in the CBA. (D.I. 35 at 14) In *Kralik v. Durbin*, 130 F.3d 76, 83 (3d Cir. 1997), the Third Circuit explained that "an accommodation to one employee which violates the seniority rights of other employees in a collective bargaining agreement simply is not reasonable." Defendant argues that, in order for plaintiff to transfer to a vacant position, she had to comply with the CBA. (D.I. 35, ex. B at ¶ 5) Under the CBA, vacant positions are posted and subject to a bidding process, where the bidder with the most seniority is assigned the position. (*Id.*) The terms of the CBA provide that only Full Time Regular ("FTR") employees can participate in the bidding process; PTF employees can request a transfer to a vacant position only if no FTR employees bid on the job.[5] (*Id.*)

Defendant claims that in 2002, when plaintiff's employment was terminated, only

---

[5]Although plaintiff does not specifically address the exact terms of the CBA, she acknowledges that as a PTF employee, she could only request a job if no FTR employees bid on the position after it was posted. (D.I. 36 at 2)

10

three Mark-Up Clerk positions were available. (D.I. 35 at 14 (citing D.I. 35, ex. B ¶ 11)) Pursuant to the CBA, each of the three positions were filled by FTR employees with higher seniority rights than plaintiff, who was a PTF employee. (*Id.*) Defendant, therefore, argues that plaintiff's failure-to-transfer claim must fail, because plaintiff could not have been transferred into a Mark-Up Clerk position without violating the collective bargaining rights of other employees. (D.I. 35 at 14-15)

Nothing in the record indicates that in 2002, defendant could have transferred plaintiff to a Mark-Up Clerk position without violating the CBA rights of another USPS employee. Plaintiff argues that her letter to Postmaster Dwight Young ("Young") establishes that a Mark-Up Clerk position was available without violating any other employee's collective bargaining rights. (D.I. 36 at 2) Plaintiff claims that after a Mark-Up Clerk position was posted on the board without any FTR employees bidding on it, plaintiff sent a letter to the Young asking to be transferred to that position. (*Id.*) However, the letter involving Young is irrelevant to the case at bar, because it is dated April 8, 1999, at which time plaintiff was being accommodated on light duty. (D.I. 37, ex. A) This letter does not prove that a Mark-Up Clerk position was available in 2002, the year that plaintiff was terminated. (*Id.*)

Plaintiff further asserts that "[t]he reason the job was not awarded to me [was] because the Postal Service was trying to terminate me[,] and they were not interested in [anything] that I wanted or had to say." (D.I. 36 at 2) Plaintiff, however, has offered no other relevant evidence other than this conclusory allegation to support her Rehabilitation Act claim concerning a Mark-Up Clerk position. At this stage of the proceedings, with discovery completed, plaintiff must present more than conclusory

11

allegations to demonstrate that a genuine issue for trial exists as to whether defendant intentionally discriminated against her. See Podobnik, 409 F.3d at 594 (quoting Celotex, 477 U.S. at 325). As a result, the court finds that plaintiff does not have a failure-to-transfer claim involving a Mark-Up Clerk position.

### 2. Nixie Table and Security Gate Monitor

Defendant further argues that plaintiff was not entitled to be transferred to either a Nixie Table or Security Gate Monitor position, because these were not official positions within the USPS. (D.I. 35 at 15) Defendant states that Nixie Table is a temporary position occasionally given to light duty employees who sit at a table and piece together mail that has been mishandled in the machinery. (Id. (citing D.I. 35, ex. B ¶ 13)) Defendant claims that the USPS never had a permanent Nixie Table employee; therefore, he was not required to create such a position under the Rehabilitation Act. (Id.)

In her answering brief, plaintiff failed to address the issue concerning whether there was an available position at the Nixie Table. (D.I. 36 at 1-3) In fact, plaintiff acknowledged at her deposition that Nixie Table is not an official job that is posted for the bidding process. (D.I. 35, ex. A at 48) Since plaintiff has not produced even the "mere existence of a scintilla of evidence" in her favor, the court concludes that she does not have a failure-to-transfer claim concerning a Nixie Table position. See Anderson, 477 U.S. at 252.

Likewise, defendant argues that Security Gate Monitor is not an official position within the USPS. (D.I. 35 at 15) Defendant states that from 2001 to 2003, an

12

employee was assigned to monitor the security gate for a few hours per day. (*Id.* (citing D.I. 35, ex. B ¶ 14)) Defendant claims that the USPS never had a permanent Security Gate Monitor, and he did not violate the Rehabilitation Act by not creating such a position. (*Id.*) Plaintiff's only evidence regarding the Security Gate Monitor position is her statement that "[i]f you have a [s]ecurity [g]ate and employees cannot enter the premises unless someone opens the gate for them [, then] why wouldn't you have a permanent position for the security gate?" (D.I. 36 at 2) This bare assertion, without more, is not sufficient to prove that Security Gate Monitor is an official position within the USPS. *See Podobnik*, 409 F.3d at 594 (quoting *Celotex*, 477 U.S. at 325).

As discussed supra, the Rehabilitation Act does not require employers to create jobs for disabled employees. *Mengine*, 114 F.3d at 418. Since plaintiff has offered no evidence (beyond her allegations and deposition testimony) establishing that either Nixie Table or Security Gate Monitor were permanent positions within the USPS, defendant could not transfer plaintiff to these positions, nor was he required to create said positions for her. *See id.* Therefore, the court concludes that plaintiff does not have a Rehabilitation Act claim involving either a Nixie Table or a Security Gate Monitor position.

### 3. Talleyville and Edgemoor Branches[6]

Defendant also argues that there were no available positions at either the

---

[6]Although plaintiff's Rehabilitation Act claims, for summary judgment purposes, were limited to whether plaintiff could have been transferred to a Mark-Up Clerk, Security Gate Monitor, or Nixie Table position, plaintiff argues that she should have been transferred to either the Talleyville or Edgemoor branch of the USPS. (D.I. 22 at 12-13; D.I. 36 at 2) As explained below, the court agrees with defendant that plaintiff does not have a Rehabilitation Act claim involving either branch.

13

Talleyville or Edgemoor branches to which plaintiff could have been transferred. (D.I. 35 at 16) Defendant asserts that the only positions available at these stations during 2002 were window and distribution clerk jobs, which required "prolonged standing, walking, and reaching, and may involve the handling of heavy sacks of mail." (D.I. 35 at 17 (quoting D.I. 35, ex. B ¶ 16)) Because of plaintiff's alleged disability, she could not perform the essential functions of these jobs. (D.I. 19 at 11-12)

Defendant further argues that these stations did not have an available "modified case" to which plaintiff could have been transferred. (D.I. 35 at 17) A "modified case" is understood to mean "a smaller case that allows an employee to case mail while seated on a stool." (D.I. 35, ex. B ¶ 16) Defendant states that only four modified cases existed at the USPS in 2002. (*Id.*) Defendant argues that since each case was already assigned to another employee during 2002, he could not assign plaintiff to one of the modified cases without displacing another employee. (*Id.*)

In response, plaintiff merely asserts that "[it] is a known fact that at the stations you sit casing mail that you learned in scheme training." (D.I. 37 at 4) This statement is conclusory and, as noted supra, plaintiff must produce more than this bare assertion to survive a motion for summary judgment. See *Podobnik*, 409 F.3d at 594 (quoting *Celotex*, 477 U.S. at 325). Moreover, since the Rehabilitation Act does not require employers to displace one employee in order to accommodate another, defendant did not violate the Rehabilitation Act by not giving plaintiff one of the four modified cases already assigned to another employee. See *Kralik*, 130 F.3d at 83.

14

## V. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (D.I. 34) is granted. An appropriate order shall issue.